IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76409-8-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| CHRISTOPHER LEWIS LOCKEN, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | FILED: July 9, 2018 |

BECKER, J. — In light of appellant's extensive history of mental illness and his receipt of Social Security disability income, we remand for reconsideration of the legal financial obligations that were imposed when he was convicted.

Appellant Christopher Locken was arrested and charged with attempting to elude police pursuit in October 2016.

Locken suffers from bipolar disorder with manic and psychotic features. He has been committed involuntarily on at least eight occasions. Locken was evaluated again after this arrest. The court found him competent to stand trial. After a one day bench trial, Locken was convicted. He was sentenced to four months' confinement and $700 in mandatory legal financial obligations.

## WAIVER OF RIGHT TO TESTIFY

Locken first contends that he did not make a valid waiver of his right to testify.

A party's assignment of error should include a "separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." RAP 10.3(a)(4). Assignments of error must be included in the appellant's brief so that the reviewing court can pinpoint the time and place in the record at which the trial court allegedly committed error, either by ruling or by failing to rule.

Locken's assignment of error raises waiver of the right to testify in the abstract, without identifying an error made by the trial court:

> In violation of the Fifth, Sixth, and Fourteenth Amendments to the United States constitution and article 1, section 22 of the Washington constitution, Mr. Locken did not knowingly, intelligently, and voluntarily waive his right to testify.

As a result of his failure to make a proper assignment of error, Locken's discussion of waiver is unfocused and the standard of review unclear.

Locken's claim of error appears to be rooted in an exchange with the trial court that took place after the State rested its case. At the request of Locken's attorney, the court asked Locken if it was his free and voluntary choice not to testify. Locken responded in part that he was "unable to properly comprehend" because his medication was "not working."

> [DEFENSE COUNSEL]: Your Honor, Mr. Locken does not wish to testify. He did have a statement he wanted to give to the Court, but—I'm sorry. He does not want to give that to the Court.

2

So if the Court wants to inquire to make sure Mr. Locken understands his right to testify.

THE COURT: Mr. Locken, I believe it was sometime this week—probably yesterday—that I advised you that you had the right to testify if you wanted to do so.

You have the right to remain silent and to refuse to testify, as well.

And is it your free and voluntary choice not to testify?

THE DEFENDANT: Yes, Your Honor. Four days ago. Yes.

THE COURT: Okay. Thank you.

THE DEFENDANT: Thank you. Thank you, your eminence.

THE COURT: You said four days ago, yes. So that makes me think you answered how long it's been since we had the hearing.

But as far as invoking your right to remain silent, you are doing that freely and voluntarily?

THE DEFENDANT: I apologize.

Hmm. I'm unable to properly comprehend because my medication is not working.

THE COURT: Sir, I'll ask it again then.

As to the—your right to invoke your silence, your right to remain silent at trial, is that your free and voluntary choice?

That's a "yes" or "no."

THE DEFENDANT: Yes. Thank you, Your Honor.

THE COURT: All right. Thank you.

According to Locken, his statement that he was unable to comprehend meant that he did not knowingly, intelligently, and voluntarily waive his right to testify.

A defendant has the constitutional right to testify in his own defense. Rock v. Arkansas, 483 U.S. 44, 49, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987). Any waiver of a constitutional right must be made knowingly, intelligently, and voluntarily. State v. Thomas, 128 Wn.2d 553, 558, 910 P.2d 475 (1996).

A trial court does not need to obtain an on-the-record waiver of the right to testify in order to assure that the waiver is valid:

> We believe that the right to testify belongs in the category of rights for which no on-the-record waiver is required. . . . The right to remain silent is waived by the act of taking the stand; the trial court has no duty to inquire as to whether the defendant knowingly and intelligently waived the right. Likewise, a court is not obligated to obtain an on-the-record waiver of the right to self-representation when a defendant appears with counsel. As with the right to self-representation, the right not to testify, and the right to confront witnesses, the judge may assume a knowing waiver of the right from the defendant's conduct. The conduct of not taking the stand may be interpreted as a valid waiver of the right to testify.

State v. Thomas, 128 Wn.2d 553, 559, 910 P.2d 475 (1996) (citations omitted).

Under Thomas, the trial court did not have to inquire if Locken was voluntarily waiving his right to testify. The court did so only at the request of defense counsel.

While Locken attempts to assert a violation of a constitutional right, his argument would seem to be more properly characterized as a challenge to the trial court's previous competency ruling, or alternatively, as an assignment of error to the trial court's failure to revisit Locken's competency sua sponte.

"Reviewing courts in Washington customarily defer to the trial court's judgment of a defendant's mental competency." State v. Coley, 180 Wn.2d 543, 551, 326 P.3d 702 (2014), cert. denied, 135 S. Ct. 1444 (2015). Competency rulings are reviewed for an abuse of discretion. Coley, 180 Wn.2d at 551. The record does not support an argument that the trial court abused its discretion in judging Locken to be competent.

4

A discussion between the trial court and defendant regarding the right to testify "might have the undesirable effect of influencing the defendant's decision not to testify." Thomas, 128 Wn.2d at 560. Locken asserts the court inappropriately influenced him into agreeing to waive his right to testify. We disagree. The trial court avoided getting into a discussion that might influence Locken. The court simply made a minimal inquiry in response to defense counsel's request. Nothing the court said can be construed as explaining the benefits or drawbacks of testifying.

We conclude Locken's first assignment of error lacks merit.

## LEGAL FINANCIAL OBLIGATIONS

Next, Locken contends the court erred in imposing legal financial obligations without first determining whether he had the means to pay them despite his mental illness.

At sentencing, the court inquired into Locken's finances. Locken said he was unemployed and received Social Security disability income. He provided no information about other sources of income or past employment. Whether he has some other source of income or is capable of gainful employment is unclear. Locken told his mental competency evaluator that he had been employed in the past, most recently working as a clown.

The court imposed $500 as a victim penalty assessment and $200 for court costs. These are obligations mandated by state statutes. The judgment and sentence ordered a notice of payroll deduction. Locken was ordered to

report to the clerk of the court and the collections deputy to determine the payment terms for the obligations.

RCW 9.94A.777

Before imposing legal financial obligations, a trial court must determine whether a defendant who suffers from a mental health condition has the ability to pay:

> (1) Before imposing any legal financial obligations upon a defendant who suffers from a mental health condition, other than restitution or the victim penalty assessment under RCW 7.68.035, a judge must first determine that the defendant, under the terms of this section, has the means to pay such additional sums.
> (2) For the purposes of this section, a defendant suffers from a mental health condition when the defendant has been diagnosed with a mental disorder that prevents the defendant from participating in gainful employment, as evidenced by a determination of mental disability as the basis for the defendant's enrollment in a public assistance program, a record of involuntary hospitalization, or by competent expert evaluation.

RCW 9.94A.777. Locken contends the court erred in imposing the obligation to pay $200 in court costs because he suffers from a mental health condition and lacks the means to pay.

Although Locken did not raise this objection below, we exercise our discretion under RAP 2.5 to hear the issue, following State v. Tedder, 194 Wn. App. 753, 757, 378 P.3d 246 (2016). In Tedder, the defendant had a history of mental illness, but the parties failed to raise RCW 9.94A.777 at sentencing. Tedder, 194 Wn. App. at 756. As a result, the trial court did not inquire or develop the record as to the defendant's ability to participate in gainful employment. Tedder, 194 Wn. App. at 757. The court remanded for reconsideration in light of RCW 9.94A.777(1).

Here, the State contends the record is inadequate to establish that Locken cannot participate in gainful employment. But inadequacy of the record is the very reason why the issue is meritorious. Under the statute, the judge "must first determine" that a defendant who has a qualifying mental health condition "has the means to pay such additional sums." RCW 9.94A.777(1). We conclude remand is necessary to develop the record and consider whether Locken should be excused from the obligation to pay court costs.

Social Security Disability Income

Locken contends the court also erred in imposing the obligation to pay a victim penalty assessment of $500. The victim penalty assessment is specifically called out in RCW 9.94A.777 as an obligation to which the statute does not apply, so that it remains mandatory under state statutes even for a defendant with a mental health condition. But Locken contends a federal statute, the antiattachment provision of the Social Security Act, relieves him from the obligation to pay even the victim penalty assessment so long as he receives Social Security disability income. This argument too is raised for the first time on appeal. If it were the only issue pertaining to Locken's legal financial obligations, we would decline to review it. But having decided to remand for determination of the applicability of RCW 9.94A.777 to the court cost obligation, we exercise our discretion to address the Social Security disability question as well.

Social Security disability income is protected from attachment and "other legal process":

7

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a). The statutory term "other legal process" means a process "much like the processes of execution, levy, attachment, and garnishment, and at a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability." Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 372, 123 S. Ct. 1017, 154 L. Ed. 2d 972 (2003).

When a defendant's only source of income is Social Security disability, a court order *enforcing* legal financial obligations falls within the Keffeler definition of "other legal process." City of Richland v. Wakefield, 186 Wn.2d 596, 609, 380 P.3d 459 (2016) (ordering the defendant to pay $15 a month when her only income was from Social Security disability violated 42 U.S.C. § 407). But so far, the court order only imposes obligations on Locken; it does not enforce them.

Currently, a sentencing judge must make an individualized inquiry into a defendant's current and future ability to pay before imposing *discretionary* legal financial obligations. State v. Blazina, 182 Wn.2d 827, 839, 344 P.3d 680 (2015). Locken contends that even when legal financial obligations are *mandatory*, courts may not impose them on a defendant who receives Social Security disability income without first determining that the defendant possesses

8

an independent source of income from which payment can be drawn. Division Three recently issued a divided opinion rejecting this argument in State v. Catling, 2 Wn. App. 2d 819, 413 P.3d 27 (2018).

The majority opinion in Catling interprets Wakefield as limiting the enforced *collection* of obligations, not the act of *imposing* the obligations.

> The Constitution does not limit the ability of the states to impose financial obligations on convicted offenders; it only prohibits the enforced collection of financial obligations from those who cannot pay them. Thus, ability to pay is not considered when imposing mandatory costs and need only be considered at the time of collection.

Catling, 2 Wn. App. 2d at 823 (citations omitted). The court affirmed the *imposition* of the obligations but remanded with an instruction to amend the judgment to explicitly prohibit the use of Social Security disability benefits in *enforcement* proceedings:

> Consistent with Wakefield, we agree that the order that Mr. Catling pay $25 per month cannot be enforced against his disability income per § 407(a). . . . The antiattachment provision prevents levying against Social Security disability proceeds, but it does not address the debt itself. . . . .
> We remand the case to superior court to amend its judgment and sentence to indicate that the [legal financial obligations] may not be satisfied out of any funds subject to 42 U.S.C. § 407(a).

Catling, 2 Wn. App. 2d at 826.

Following Catling, we hold that the federal statute does not prevent the trial court from including a legal financial obligation in the judgment and sentence of a defendant who receives Social Security disability benefits. Nor is there any necessity for the court to inquire at the time of sentencing whether the defendant has other sources of income from which the obligation might be paid.

Ability to pay "is not considered when imposing mandatory costs and need only be considered at the time of collection." Catling, 2 Wn. App. 2d at 823. But we also agree with Catling that when sentencing a defendant who receives Social Security disability benefits, the best practice is to state explicitly in the judgment and sentence that legal financial obligations may not be satisfied out of any funds subject to 42 U.S.C. § 407(a).

When this matter returns to the court to address Locken's claim under RCW 9.94A.777, the superior court should take the opportunity to amend the judgment and sentence to indicate that Locken's legal financial obligations may not be satisfied out of any funds subject to 42 U.S.C. § 407(a).

In a statement of additional grounds for review under RAP 10.10, Locken alleges that the officer who arrested him was drunk and that he, Locken, placed the officer under citizen's arrest. Because the nature of the alleged error is unidentified, review is not warranted.

The conviction is affirmed. The matter is remanded for further proceedings with respect to the legal financial obligations as provided by this opinion.

Becker, J.

WE CONCUR:

Spearman, J.

10