[No. 47012-8-II.    Division Two.    June 28, 2016.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMASON C. TEDDER, *Appellant*.

Jodi R. Backlund (of Backlund & Mistry), for appellant.

Ryan P. Jurvakainen, Prosecuting Attorney, and Eric H. Bentson, Deputy, for respondent.

¶1 SUTTON, J. — Jamason C. Tedder appeals his convictions and sentence for second degree assault, felony harassment, and unlawful imprisonment. Tedder argues that because he suffers from a mental health condition, the trial court erred when it failed to determine whether he had the ability to pay $2,125 in imposed mandatory and discretionary legal financial obligations (LFOs).

¶2 In the published portion of this opinion, we hold that the trial court erred when it failed to determine whether Tedder had the ability to pay any LFOs as required by RCW 9.94A.777(1) and discretionary LFOs under Blazina.[1] In the unpublished portion, we address and reject Tedder's arguments regarding his convictions. Accordingly, we affirm Tedder's convictions but remand for the trial court to reconsider the imposition of any LFOs under RCW 9.94A-.777(1) and discretionary LFOs under Blazina.

## FACTS

¶3 Tedder has an extensive history of mental illness, including diagnoses for schizoaffective disorder, antisocial personality disorder, and bipolar I disorder, and more than two dozen past hospitalizations for mental health treat-

---

[1] State v. Blazina, 182 Wn.2d 827, 344 P.3d 680 (2015).

ment.[2] On one or two prior occasions, Tedder appeared in mental health court.

¶4 Tedder attended high school until the 10th grade, dropped out, and then earned his GED (general equivalency diploma). Before his arrest, Tedder resided in a number of apartments, including living with his mother. Tedder planned to rent a room from his mother after release. He had a number of jobs in the past, including detailing cars, caregiving/certified nurse's assistant, bussing tables, logging, landscaping, and painting. He also reported having worked at a cannery, at a tree farm, and in sewage treatment. Before Tedder's trial, a psychologist described Tedder as "lucid, cognitively intact, and knowledgeable," and determined that he was competent to stand trial. Clerk's Papers at 98-99.

¶5 In February 2014, Tedder was arrested and charged with second degree assault with a deadly weapon, felony harassment, and unlawful imprisonment in relation to an incident involving his then girlfriend, Dolly Sage. A jury found Tedder guilty as charged.

¶6 At sentencing, Tedder's counsel disclosed to the trial court that he had represented Tedder a number of times in the past when Tedder had "breaks," and that after Tedder's admission into mental health court, Tedder became homeless when living with his father did not work out and was then hospitalized at Western State Hospital. 3 Verbatim Report of Proceedings at 500-01. The trial court recognized Tedder's difficulties when he was not medicated and acknowledged that Tedder had appeared before the mental health court. The trial court made no further inquiry into Tedder's employment history or his future employment prospects before imposing $600 in mandatory LFOs and $1,525 in discretionary LFOs as a condition of Tedder's sentence. Tedder did not object to the imposition of the

---

[2] Tedder was hospitalized on 18 occasions in local hospitals, and hospitalized on 7 occasions in Western State Hospital, a Washington State mental health treatment facility.

LFOs or offer evidence that he was not able to pay them presently or in the future. After sentencing, the trial court found Tedder indigent for purposes of an appeal and entered an order of indigency. Tedder appeals the trial court's imposition of the LFOs.

## ANALYSIS

¶7 For the first time on appeal, Tedder argues that because he has a mental health condition, the trial court exceeded its authority in imposing mandatory and discretionary LFOs because it failed to determine whether he had the ability to pay as required by RCW 9.94A.777(1) and our Supreme Court's holding in *Blazina*.

¶8 Generally, we may decline to review issues raised for the first time on appeal. RAP 2.5(a). But we exercise our discretion here to consider the imposition of LFOs.

¶9 RCW 9.94A.777(1) requires that a trial court determine whether a defendant who suffers from a mental health condition has the ability to pay any LFOs, mandatory or discretionary.

> (1) Before imposing any legal financial obligations upon a defendant who suffers from a mental health condition, other than restitution or the victim penalty assessment under RCW 7.68.035, a judge must first determine that the defendant, under the terms of this section, has the means to pay such additional sums.
>
> (2) For the purposes of this section, a defendant suffers from a mental health condition when the defendant has been diagnosed with a mental disorder that prevents the defendant from participating in gainful employment, as evidenced by a determination of mental disability as the basis for the defendant's enrollment in a public assistance program, a record of involuntary hospitalization, or by competent expert evaluation.

RCW 9.94A.777.

¶10 Here, as evidenced by his numerous involuntary hospitalizations and treatment in mental health court,

Tedder clearly suffers from a mental health condition as defined under RCW 9.94A.777. Tedder's mental health history, his history in mental health court, the fact that he relies on family for housing, and the court's order of indigency suggest that Tedder has no assets. While he self-reported past employment, there was no independent verification that he was actually employed or employable in those positions.

¶11 The record suggests that Tedder did not have the current ability to pay any LFOs and that his incarceration and his mental health history could potentially prevent him from holding employment following his release from custody. But the trial court never fully inquired into Tedder's work history, his education, whether he could potentially hold a job in the future, or whether he has any outstanding debts.

¶12 In *Blazina*,[3] our Supreme Court remanded the trial court's imposition of *discretionary* LFOs for an individualized determination, even though the defendants had not objected below, because it found that the pernicious consequences of "broken LFO systems" on indigent defendants "demand" that it reach the issue. 182 Wn.2d at 830, 835. Based on this record, Tedder will likely face those same consequences. The record shows that the trial court failed to make an individualized inquiry under *Blazina* into Tedder's ability to pay discretionary LFOs. And, as we analyzed above, the trial court failed to fully inquire into Tedder's ability to pay any LFOs as required under RCW 9.94A-.777(1). Thus, we remand to the trial court for reconsideration of the LFOs consistent with RCW 9.94A.777(1) and *Blazina*.

¶13 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder

---

[3] *Blazina* only applies to discretionary LFO's ordered under RCW 10.01.160.

shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, C.J., and MAXA, J., concur.