IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76042-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KIER KEANDE GARDNER, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: April 15, 2019 |

ANDRUS, J. — Kier Keand'e Gardner[1] was convicted of two counts of felony violation of a no-contact order (VNCO), as well as one count each of first degree burglary, second degree assault, and third degree malicious mischief. He challenges the two VNCO convictions on double jeopardy grounds. He also challenges the imposition of a 12-month community custody term in light of his 60-month sentence on the felony VNCO convictions. Keand'e also seeks a waiver of

---

[1] In his Statement of Additional Grounds (SAG), Appellant contends Kier Keand'e and Gardner are two different individuals. This argument appears to be consistent with arguments he repeatedly raised with the trial court, contending he was the "representative of Mr. Gardner." Although Appellant expressed a preference to be addressed as "Kier Ke'Ande," "Kier Keand'e," or "Mr. Keand'e," he admitted at arraignment that his full name was Kier Keande Gardner. And the State produced testimony to establish that Kier Keand'e and Gardner are the same person, thereby proving for criminal liability purposes, that Appellant, regardless of the name he answers to, committed the offenses for which he was convicted.

Nonetheless, because Appellant has expressed a strong and consistent preference regarding his identity—that he is Keand'e and not Gardner—we will refer to him as Keand'e here.

any discretionary legal financial obligations (LFOs) based on his mental health status.

In a Statement of Additional Grounds (SAG), Keand'e argues the trial court erred in not allowing him to plead guilty and in denying his request to represent himself. He also argues there is insufficient evidence supporting the burglary conviction.

Based on the State's concession of error as to the felony VNCO convictions, we remand for the trial court to vacate one of these convictions and to strike the community custody associated with the remaining felony VNCO conviction. Additionally, on remand, the trial court should determine whether Keand'e's mental health status requires a waiver of LFOs under RCW 9.94A.777. We otherwise affirm Keand'e's convictions and sentence.

## FACTS

Marilyn Gardner[2] had a no-contact order protecting her from Keand'e. Charitie Wells, Keand'e's girlfriend, lived with Marilyn.

On October 5, 2014, Wells and Keand'e argued with each other via text message for most of the day. That night, Wells was startled by a banging on the front door. Wells, assuming Keand'e was the person knocking, joined Marilyn in her upstairs bedroom to avoid having to listen to him.

After five minutes, the banging stopped. Wells and Marilyn then heard a loud noise that Wells described as a pop or a bang. Wells testified that it "freaked

---

[2] Because Keand'e and his mother share a last name, we refer to Keand'e's mother by her first name, Marilyn, when necessary, to reduce any possible confusion between Keand'e and his mother. No disrespect is intended.

- 2 -

[her] out because it was so loud." She later discovered Keand'e had forced his way into the home, damaging the sliding glass door in the process. Wells heard Keand'e rummaging in a silverware drawer in the kitchen, and then stomp upstairs. She was so scared she backed herself into the corner on the bed behind Marilyn.

Keand'e appeared holding a kitchen knife with an eight-inch blade. Marilyn positioned herself between her son and Wells, to protect Wells. Keand'e stood about a foot away from Marilyn, with the knife pointed downward, and he told his mother that he just wanted to talk to Wells. Keand'e then pushed Marilyn aside. Wells screamed as she moved to the other side of the bed. Marilyn tried to pull Keand'e away but he brushed her off. Keand'e then cornered Wells and swung the knife toward her like he was trying to stab her. Wells continued to scream for help.

Marilyn was ultimately able to pull Keand'e off of Wells. Wells heard someone outside yell that the police were on their way. Keand'e told his mother and Wells to sit on the bed, calm down, and be quiet. He sat down with them, still holding the knife. When Keand'e loosened his grip on the knife, Marilyn grabbed it and tossed it under the bed.

When the police arrived, Marilyn and Wells fled downstairs. Police and a K-9 dog found Keand'e hiding under Marilyn's bed. Wells later discovered that Keand'e had nicked her several times with his knife when he waved it at her.

The State charged Keand'e with several domestic violence crimes: one count of first degree burglary, two counts of second degree assault, two counts of felony VNCO, and one count of third degree malicious mischief. Following a bench

trial, Keand'e was acquitted of one count of second degree assault and convicted on all other counts.

Because of Keand'e's extensive criminal history and aggravating factors found by the court, it imposed an exceptional sentence of 130 months for burglary, 70 months for assault, 60 months for both felony VNCO convictions, and 364 days for malicious mischief. The trial court also imposed terms of community custody— 18 months each for the burglary and assault and 12 months for each of the felony VNCO convictions. Keand'e appeals.

## ANALYSIS

Keand'e, through counsel, challenges three issues on appeal: (1) whether his convictions of two counts of felony VNCO violate double jeopardy, (2) whether his 12-month community custody term for the VNCO crimes exceeds the time allowed by statute, and (3) whether, in light of Keand'e's mental health, the trial court erred by not waiving discretionary LFOs. The State concedes error as to the first two issues and has no objection to a remand for the trial court to consider the third. We conclude the concessions are well-founded and agree a remand is appropriate for reconsideration of LFOs.

First, the two felony VNCO convictions arise out of the same "unit of prosecution," and both cannot stand. The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington State Constitution provide protections against double jeopardy. State v. Brown, 159 Wn. App. 1, 9, 248 P.3d 518 (2010). These double jeopardy clauses prohibit the State from punishing an offender multiple times for the same offense. State v. Linton, 156 Wn.2d 777, 783,

132 P.3d 127 (2006). Claims of double jeopardy are questions of law that we review de novo. State v. Hughes, 166 Wn.2d 675, 681, 212 P.3d 558 (2009).

Under the "unit of prosecution" test, double jeopardy precludes multiple convictions for committing just one "unit" of the crime. State v. Adel, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998). In Brown, this court held that RCW 26.50.110 punishes each separate contact with a protected party as a separate violation of a no-contact order. 159 Wn. App. at 10-11 (each phone call occurring on consecutive days constituted distinct violations of the protection order); see also State v. Allen, 150 Wn. App. 300, 307, 207 P.3d 483 (2009) (same regarding email).

However, a unit of prosecution may be either a single act or a course of conduct. See State v. Tvedt, 153 Wn.2d 705, 710, 107 P.3d 728 (2005). For example, this court identified contacts with a protected person over the course of a single incident to be just such a course of conduct. State v. Spencer, 128 Wn. App. 132, 137-38, 114 P.3d 1222 (2005).

In count 4, the State charged Keand'e with a violation of Marilyn's no-contact order by entering her home on October 5, 2014, in violation of RCW 26.50.110(5). In count 5, the State charged Keand'e with a violation of the no-contact order by assaulting Marilyn in violation of RCW 26.50.110(4). The State concedes that Keand'e's actions were a single course of conduct and thus constitute only a single VNCO, and not two. We agree, and one of these two felony VNCO convictions must be vacated.

Second, the State concedes the trial court erred in imposing community custody for the VNCO conviction. Under RCW 9.94A.701(9), a sentence of confinement and community custody cannot exceed the statutory maximum term for the crime. Keand'e's conviction for violating the no-contact order is a Class C felony. RCW 26.50.110(4)-(5). Class C felonies are punishable by a maximum term of 60 months. RCW 9A.20.021(1)(c). The trial court sentenced Keand'e to 60 months of total confinement, plus 12 months of community custody. This it cannot do under RCW 9.94A.701(9). We remand for the trial court to strike the community custody term for Keand'e's remaining felony VNCO conviction.

Lastly, Keand'e argues the trial court erred by not waiving his LFOs based on his mental health condition. RCW 9.94A.777 provides that before imposing any discretionary LFOs, a trial court must determine whether a defendant who suffers from a mental health condition has the means to pay them. Our Supreme Court held "that a trial court has a statutory obligation to make an individualized inquiry into a defendant's current and future ability to pay before the court imposes LFOs." State v. Blazina, 182 Wn.2d 827, 830, 344 P.3d 680 (2015). And the Court of Appeals held that Blazina extends to a defendant who suffers from a mental health condition under RCW 9.94A.777. State v. Tedder, 194 Wn. App. 753, 756-57, 378 P.3d 246 (2016). On remand, the trial court should consider whether Keand'e suffers from a mental health condition, and if so, whether he has the ability to pay discretionary LFOs. See id. at 757.

- 6 -

Keand'e raises a myriad of issues in his SAG under RAP 10.10, only three of which merit consideration here[3]—(1) whether the trial court erred by refusing to let him plead guilty, (2) whether the trial court erred by denying his request to represent himself on the day of trial, and (3) whether sufficient evidence supports his conviction for burglary.[4]

First, Keand'e argues the trial court erred by refusing to allow him to plead guilty. "The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." CrR 4.2(d); see also State v. Mendoza, 157 Wn.2d 582, 587, 141 P.3d 49 (2006) (guilty plea must be knowing, voluntary, and intelligent). A trial court's refusal to accept a guilty plea is within its sound discretion. United States v. Crosby, 739 F.2d 1542, 1544 (11th Cir. 1984). We will not disturb the ruling on appeal, unless the refusal is without justification and thus an abuse of discretion. Id.

The trial court did not abuse its discretion in finding that Keand'e's decision to enter pleas of guilty was neither knowing nor intelligent. Keand'e insisted that he had "stipulated to the facts" so there was no need to have a trial. Keand'e appeared convinced that if he pleaded guilty, he could merely pay a fine and be released from custody. The trial court correctly determined that Keand'e misunderstood the sentencing statutes.

Keand'e focuses on the language of RCW 9A.20.021, which sets out the maximum sentences for crimes—both for confinement and for monetary fines.

---

[3] We conclude the other issues Keand'e raises in his SAG lack merit.
[4] Keand'e also filed several pro se motions related to his SAG, RAP 17.1, which we deny.

Keand'e claims that the "or" in RCW 9A.20.021 allows the trial court to punish him by confinement or by fine, and factoring in the rule of lenity requires that the interpretation most favorable to him—being punished solely with a fine—be adopted.

Keand'e, however, ignores the sentencing ranges set out in the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. Unless a statutory exception applies or a standard range sentence has not been established, trial courts shall impose sentences within the standard range. RCW 9.94A.505(1)-(2)(a)(i). For Keand'e, with his extensive criminal history and extraordinarily high offender score, the SRA mandates he serve some time in confinement. RCW 9.94A.530; RCW 9.94A.510. Keand'e's inability, or refusal, to understand this concept showed that he did not understand the consequences of the plea, rendering his guilty plea unknowing and unintelligent—no matter how voluntary it may have been. Therefore, the trial court did not err in refusing to accept his plea.

Next, Keand'e contends the trial court erred by denying his request to represent himself. Keand'e's right to represent himself is protected by the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington State Constitution. Faretta v. California, 422 U.S. 806, 819-21, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); State v. Madsen, 168 Wn.2d 496, 500, 229 P.3d 714 (2010). When a defendant who has been found competent to stand trial seeks waiver of counsel, the waiver of counsel must be voluntary, knowing, and intelligent. In re Rhome, 172 Wn.2d 654, 667, 260 P.3d 874 (2011). In determining whether a waiver of counsel is knowing and intelligent, the trial court may consider

a defendant's mental health history and status when competency has been questioned, even where the defendant has been found competent to stand trial. Id.

The trial court's decision to grant or deny a defendant's request to represent himself is reviewed for abuse of discretion. State v. Curry, 191 Wn.2d 475, 483, 423 P.3d 179 (2018). A trial court abuses its discretion only if its decision is manifestly unreasonable, rests on facts unsupported in the record, or was reached by applying the wrong legal standard. Id. at 483-84. We give great deference to the trial court's determination. Id. at 484. Even if we disagree with the trial court's ultimate decision, we do not reverse that decision unless it falls outside the range of acceptable choices because it was reached by applying the wrong legal standard, it rests on facts unsupported by the record, or it is manifestly unreasonable. Id. Moreover, self-representation determinations must be made on a case-by-case basis, taking into consideration the circumstances of each request. Id. at 490.

We conclude the trial court did not abuse its discretion when it denied Keand'e's request to represent himself at trial. Keand'e first moved to represent himself on June 4, 2015. The trial court granted this motion in an oral ruling. On June 24, 2015, the trial court held a hearing to address objections Keand'e had to the written order documenting the ruling. During the hearing, the trial court struggled to control Keand'e and considered appointing standby counsel for him over his objection. Keand'e continued to interrupt the trial court and to object to everything the court said. The trial court had to suspend the hearing and could not

proceed to arraign Keand'e on the third amended information because of his disruptive behavior. Before recessing, the trial court agreed not to appoint standby counsel.

The next day, the Whatcom County Sheriff's Office sent a memo to the trial court, expressing "serious concerns" over whether the Sheriff's Office could accommodate Keand'e's self-representation. The Chief indicated Keand'e was unable to follow the rules of the court system and his misunderstanding about these rules was interfering with his ability to adequately represent himself. Specifically, the Sheriff's Office notified the court that Keand'e asserted he was not Keand'e and had refused to identify himself to deputies, claiming his name was "private property." The Chief also expressed concern, confirmed by Corrections Mental Health Staff, that Keand'e "may have some underlying behavioral health issues that are hindering his abilities to make reasonable decisions and understand how to utilize the processes of our criminal justice system to move his case forward."

The trial court set a hearing for July 1, 2015, to reassess Keand'e's ability to represent himself given his disruptive behavior during the earlier hearing, but Keand'e declined to attend the hearing. The trial court found good cause to reverse its decision to allow Keand'e to represent himself, and reappointed Keand'e's former attorney to represent Keand'e. The trial court ordered a competency evaluation of Keand'e. In fact, twice in less than six months, the trial court entered orders staying the proceedings and ordering mental health evaluations for Keand'e. Doctors at Western State Hospital were only successful

in observing Keand'e from afar, as he would not cooperate with the evaluations. Doctors, including a private physician retained by Keand'e's public defender, found Keand'e competent to stand trial.

On the first day of trial, September 6, 2016, Keand'e claimed he had waived his right to counsel. The trial court indicated it had found he was not capable of proceeding without counsel and did not reconsider this decision. Keand'e's demeanor then became even more combative, and he eventually proclaimed he was "done with this" and told the trial court that it was not proceeding without him, even though he was voluntarily absenting himself from the courtroom.

The trial court's decision to reappoint counsel for Keand'e and its refusal to allow him to represent himself during trial was not manifestly unreasonable. First, the record amply reveals that Keand'e's mental health condition interfered with his ability to represent himself.

Second, the "right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." Faretta, 422 U.S. at 834 n.46. The trial judge may "terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." Id.; see also Madsen, 168 Wn.2d at 509 ("A court may deny pro se status if the defendant is trying to postpone the administration of justice."); accord United States v. Weast, 811 F.3d 743, 748 (5th Cir. 2016) (upholding trial court's refusal to allow defendant to represent himself due to "obstreperous conduct," including refusing to answer basic questions, such as his name, and "interrupt[ing] the court ad nauseam"), cert. denied, 137 S. Ct.

126, 196 L. Ed. 2d 99 (2016). In 2015, when the trial court reversed the decision to allow Keand'e to represent himself, it did so only after Keand'e engaged in persistent disruptive behavior during legal proceedings he attended and refused to attend other proceedings. Keand'e refused to accept the trial court's clear directions regarding how to conduct himself in the courtroom or its clear summary of applicable law and rules of procedure. For these reasons, the trial court did not abuse its discretion in refusing to allow Keand'e to represent himself before or during trial.

Lastly, Keand'e maintains insufficient evidence supports his conviction for burglary, arguing he did not enter his mother's home with the intent to commit any crime. "The standard of review for a challenge to the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Sweany, 174 Wn.2d 909, 914, 281 P.3d 305 (2012) (internal quotation marks omitted). Keand'e was convicted of burglary in the first degree, domestic violence. A person is guilty of burglary in the first degree:

> if, with the intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor . . . (a) is armed with a deadly weapon or (b) assaults any person.

RCW 9A.52.020(1).

There was substantial evidence at trial from which a rational fact-finder could conclude that Keand'e entered or remained in his mother's home unlawfully with the intent to assault Wells or his mother. He was overheard rummaging in the

silverware drawer in the kitchen before he climbed the stairs and was seen holding a knife. A rational fact-finder could conclude he formed the intent to commit assault by intentionally seeking out a weapon. The evidence also supports a finding that the knife was large enough to constitute a deadly weapon. Finally, Wells's testimony supports a finding that Keand'e assaulted her and his mother while present inside his mother's home. For these reasons, we conclude there was sufficient evidence to support the burglary conviction.

We remand to the trial court to vacate one of the two felony VNCO convictions, to strike the 12-month community custody term on the remaining VNCO conviction, and to consider whether Keand'e has a mental health condition sufficient to require a waiver of discretionary LFOs under RCW 9.94A.777. Otherwise, we affirm Keand'e's remaining convictions.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

_Andrus, J._

WE CONCUR:

_Smith, J._

_Mann, ACJ_

- 13 -