# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  53390-1-II |
| Respondent, | |
| v. | |
| BYRON MARTIN SPEAR, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Byron M. Spear appeals his convictions for three counts of first degree rape of a child and two counts of first degree child molestation.  Spear argues that the trial court erred by failing to instruct the jury that each count must be based on a separate and distinct act and by failing to instruct the jury that the jury must be unanimous in order to reach a verdict after the jury asked a question about unanimity.  Spear also appeals his sentence arguing the trial court erred by including Spear's convictions from Idaho in calculating Spear's offender score, imposing a community custody condition restricting Spear's access to the internet or email by electronic devices without Community Corrections Officer or treatment provider approval, imposing a community custody condition requiring Spear to submit to testing and reasonable searches for illegal or controlled substances, imposing a DNA collection fee because the record establishes that Spear suffers from a mental health condition and does not have the ability to pay, and imposing community custody supervision fees.

We affirm Spear's convictions but remand to the trial court to strike the community custody condition prohibiting access to the internet or email.  We also reverse the imposition of the DNA

No. 53390-1-II

collection fee and the community custody supervision fees, and remand to the trial court to reconsider the imposition of a DNA collection fee and community supervision fees.

FACTS

A.    BACKGROUND

Between October 2016 and July 2017, Byron Spear acted as the caretaker for his sister's children.  During this time, Spear sexually abused his niece, A.R.S.,[1] on several occasions.  On August 17, 2018, the State charged Spear with three counts of first degree rape of a child[2] and two counts of first degree child molestation.[3]

B.    JURY TRIAL

Spear's case was tried to a jury.  Before jury selection, the trial court read the information to the prospective jury members.  The information stated for each count that it was "'a separate and distinct act from all other counts.'"  1 Verbatim Report of Proceeding (VRP) at 31-32.

At trial witness testimony established the following.

1.    Evidence of Abuse

A.R.S. lived in Lacey, Washington for about two years when she was 8-9 years old.  During her time in Washington, A.R.S. lived with her mom, dad, brothers, and Spear, her mother's brother.  A.R.S. was not married, and Spear was more than two years older than A.R.S.

---

[1]  We use initials to protect the victim's identity and privacy interests.  *See* General Order 2011-1 of Division II, *In re the Use of Initials or Pseudonyms for Child Witnesses in Sex Crimes* (Wash. Ct. App.), available at: http://www.courts.wa.gov/appellate_trial_courts/.

[2]  Former RCW 9A.44.073 (1988).

[3]  Former RCW 9A.44.083 (1994).

Both of A.R.S.'s parents were in the military and worked outside the house. A.R.S.'s family moved to Washington from North Carolina in September 2016. Spear lived with the family rent free in exchange for his watching the children. Spear was medically discharged from the military and received disability pay from the VA. Part of his disability was for post-traumatic stress disorder (PTSD) and anxiety. Spear moved in with A.R.S.'s family in October 2016 and stayed with them until July 2017.

A.R.S. testified that Spear did "something he wasn't supposed to." 2 VRP at 277. According to A.R.S., Spear licked her vagina 5-10 different times until Spear moved out of their house. One time, when A.R.S. was about to turn 9, Spear had A.R.S. rub his penis and sperm came out. Spear also touched A.R.S.'s vagina with his finger. Another time, Spear put a vibrating tool on A.R.S.'s vagina. Spear also rubbed his penis up and down on top of A.R.S.'s vagina.

In 2018, A.R.S. and her mother had a conversation regarding whether or not Spear had sexually abused A.R.S. Initially when asked if Spear had done anything to her, "[A.R.S.] had this weird look and she [said] no. She was scared." 2 VRP at 314. A.R.S.'s mother pressed further, and A.R.S. disclosed the sexual abuse perpetrated by Spear. A.R.S.'s mother contacted law enforcement.

Heather McLeod, a nurse practitioner with the St. Providence Sexual Assault Clinic and a certified sexual assault nurse examiner, examined A.R.S. on July 11, 2018. During the examination, A.R.S. told McLeod that Spear "had put his inappropriate spot on her inappropriate spot." 2 VRP at 342. A.R.S. stated that this had hurt and she felt like Spear was forcing her to do it. A.R.S. felt like metal was being put in her. A.R.S. reported that Spear had also put his finger

on the outside of her vagina. Additionally, Spear's penis had contacted A.R.S.' hand and sperm came out.

McLeod's genital exam of A.R.S. showed no visible evidence of trauma. But this was normal in children even when abuse or penetration had occurred. According to McLeod, "[A.R.S.'s] medical history was clear, consistent, and detailed for sexual abuse." 2 VRP at 360.

G.F., a then 16 year old, testified that she had a conversation with Spear about sex on SnapChat, wherein Spear talked to G.F. about his niece, who was 9 years old. Spear stated that a year prior, Spear had woken up to the 9-year-old "doing things to him." 2 VRP at 387. Those things were sexual. Spear told G.F. that he did not have sexual intercourse with his niece, but that he had "gone down" on his niece. 2 VRP at 389.

2.    Spear's testimony

Spear testified that in the summer and fall of 2016, Spear was living in Burien with friends. Spear was not working but was receiving a disability income from the military. Spear's sister contacted him, stating that she needed help with childcare. Spear moved in with his sister in October 2016, where he had a room of his own.

Spear was very rarely alone with A.R.S., and did not remember being alone with her in his room. But on cross-examination, Spear testified that there were times when A.R.S.'s brother was watching television and A.R.S. was upstairs in Spear's room. And sometimes, A.R.S. would watch Spear play video games in his room. A.R.S. would sit on the bed or the floor during those times.

Spear denied sexually abusing A.R.S. Spear also stated that he had not been able to produce sperm for the last 5-6 years.

No. 53390-1-II

3.       Jury Instructions

The trial court instructed the jury, in relevant part, as follows:

INSTRUCTION NO. 2

As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict. . . . Nor should you change your mind just for the purpose of reaching a verdict.

. . . .

INSTRUCTION NO. 3

A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count.

Clerk's Papers (CP) at 78-79.  With regard to the three first degree rape of a child charges, the trial court instructed the jury as follows,

INSTRUCTION NO. 7

The State alleges that the defendant committed acts of Rape of a Child in the First Degree on multiple occasions. To convict the defendant on any count of Rape of a Child in the First Degree, one particular act of Rape of a Child in the First Degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of Rape of a Child in the First Degree.

CP at 83.  The trial court then separately instructed the jury for each of the three counts of first degree rape of a child charge.  The to-convict instruction for Count 1 stated,

To convict the defendant of the crime of Rape of a Child in the First Degree, as charged in Count 1, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or between October 1, 2016 and July 31, 2017, the defendant had sexual intercourse with [A.R.S.];
(2) That [A.R.S.] was less than twelve years old at the time of the sexual intercourse and was not married to the defendant;

5

(3) That [A.R.S.] was at least twenty-four months younger than the defendant; and

(4) That this act occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 87. The to-convict instructions for Counts 2 and 3 were substantively the same as the instruction for Count 1. With regard to the first degree child molestation charges, the trial court instructed the jury as follows,

INSTRUCTION NO. 15

The State alleges that the defendant committed acts of Child Molestation in the First Degree on multiple occasions. To convict the defendant on any count of Child Molestation in the First Degree, one particular act of Child Molestation in the First Degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of Child Molestation in the First Degree.

CP at 91. The trial court then separately instructed the jury for each of the two first degree child molestation charge. The to-convict instruction for Count 4 stated,

To convict the defendant of the crime of Child Molestation in the First Degree, as charged in Count 4, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or between October 1, 2016 and July 31, 2017, the defendant had sexual contact with [A.R.S.];

(2) That [A.R.S.] was less than twelve years old at the time of the sexual contact and was not married to the defendant;

(3) That [A.R.S.] was at least thirty-six months younger than the defendant; and

(4) That this act occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

6

CP at 93. The to-convict instructions for Counts 5 was substantively the same as the

instruction for Count 4. Finally, the trial court instructed the jury as follows,

INSTRUCTION NO. 19

. . . .

You must fill in the blank provided in each verdict form the words "not guilty" or the word "guilty", according to the decision you reach.
Because this is a criminal case, each of you must agree for you to return a verdict. When all of you have so agreed, fill in the verdict forms to express your decision.

CP at 95.

3. Closing Argument

During its closing argument, the State informed the jury that "[e]ach of the 'to convict'

instructions for the first three counts [were] exactly the same. You have to find separate instances

or separate incidents for each one. You have to be unanimous in that each one has a separate time."

3 VRP at 527-28. The State stated that it believed there was enough evidence to find beyond a

reasonable doubt that the defendant had sexual intercourse with A.R.S. at least three times. The

State argued,

So to convict Counts 1, 2, and 3, you can use any variety of the things you heard. You can use that the defendant licked [A.R.S.] on three different occasions, licked her vagina. You can use that he licked her vagina and put his finger and on her vagina. You can use that he licked her vagina, put his finger in the vagina, and that his penis penetrated her vagina, however slight, even though it was going up and down, but you have to be unanimous as to which three happened. You have to be unanimous. All 12 people have to agrees (sic) on each count, and each count has to be a separate act.

3 VRP at 529. The State then informed the jury that the last two charges involved child molestation. Examples of this molestation included physical touch, rubbing A.R.S.'s vagina, and touching her vagina with a vibrator.

4.      Jury Questions

During deliberations, the jury posed questions to the trial court. The jury asked, "Upon reading instruction 7. Do we have to be unanimous on all counts? If we do not have a unanimous vote how is it reported on the verdict form?" CP at 74. Spear asked that the trial court answer the question: "I do think it would be appropriate to make sure the jury understands that any verdict must be unanimous." 3 VRP at 559. The trial court stated that it was concerned about the language of Criminal Rule 6.15(f)(ii) because any further instruction beyond the jury instructions "might be considered some sort of instruction on the consequences of no agreement." 3 VRP at 559-60. Spear then suggested the following response, "In order to reach a verdict on any count, that verdict must be unanimous." 3 VRP at 560. The trial court noted that the unanimity requirement could be found in instructions 7 and 19. The trial court replied to the jury, "Please reread your instructions." CP at 74.

The jury also asked, "Do all 3 counts need to be a different act or can they be multiple occurrences of the same type of act." CP at 101. Both the State and Spear agreed that the trial court should tell the jury to reread the instructions. The trial court replied to the jury, "Please re-read the instructions." CP at 101.

C.      VERDICT AND SENTENCING

1.      Verdict

The jury found Spear guilty as charged. Following the verdicts, the trial court polled the jury. Each jury member stated that each verdict was their verdict as well as the verdict of the jury.

2.      Pre-Sentence Investigation

The pre-sentence investigation report stated that Spear enlisted in the military in 2006 and was medically discharged in 2010. Spear reported that his finances were fine other than about $3,000 he owed in medical and other miscellaneous bills. He was receiving $1150 per month from the Army and living off that. Spear also reported he was a caregiver in Idaho. Spear relied on friends and family for housing.

Spear reported that he was diagnosed with manic depression, depression, anxiety, and PTSD. Spear stated that he took pills every day for these issues and had a mental health therapist. He reported having a history of self-abuse and had attempted to commit suicide.

3.      Criminal History

On April 10, 2019, the State, Spear, and Spear's trial attorney signed and presented to the trial court the Prosecutor's Statement of Criminal History. This statement included two Idaho convictions. The crimes were listed as "Lewd Conduct with a Minor Under 16 (comparable to Child Molestation in the Third Degree – RCW 9A.44.089)," and "Enticing a Child Through Internet, Video, Image or other Communication Device (comparable to Communicating with a Minor for Immoral Purposes through electronic means – RCW 9.68A.090(2))." CP at 102. The offense dates were March 22, 2018 and June 30-July 2, 2018, respectively.

Spear and Spear's defense attorney signed below a provision stating, "The defendant and the defendant's attorney hereby stipulate that the above is a correct statement of the defendant's criminal history relevant to the determination of the defendant's offender score in the above-entitled cause." CP at 102. An attachment to the statement listed the offender score as 9+.

4.      Sentence

The trial court calculated Spear's offender score at 9+ and sentenced Spear to 318 months to life in confinement. The trial court found Spear indigent and ordered Spear to pay a $500 crime victim assessment fee and a $100 DNA collection fee. The trial court also ordered Spear to pay community custody supervision fees as determined by the Department of Corrections.

The trial court imposed community custody conditions, which included not having access to the internet or email by electronic devices without Community Corrections Officer or treatment provider approval and not possessing illegal or controlled substances without the written prescription of a licensed physician. To verify compliance with the prohibition on possessing illegal or controlled substances, Spear was ordered to submit to testing and reasonable searches of his person, residence, and vehicle.

ANALYSIS

A.      SEPARATE AND DISTINCT

Spear argues that the jury convicted him of multiple offenses without being instructed that each count must be based on a separate and distinct act, which relieved the State of its burden of proof and violated the prohibition against double jeopardy. Spear contends that the jury's question

about different acts "shows the jury did not understand that the five counts must be based on different factual acts." Br. of Appellant at 16. We disagree.[4]

The double jeopardy clauses of the federal and state constitutions protect defendants from being "'punished multiple times for the same offense.'"[5] *State v. Fuller*, 185 Wn.2d 30, 33-34, 367 P.3d 1057 (2016) (quoting State *v. Linton*, 156 Wn.2d 777, 783, 132 P.3d 127 (2006)); *see* U.S. CONST. amend. V; WASH CONST. art. I, § 9. We review double jeopardy claims de novo. *State v. Mutch*, 171 Wn.2d 646, 661-62, 254 P.3d 803 (2011).

When the State provides evidence of multiple acts that could form the basis of more than one of the crimes charged, the trial court should instruct the jury that each count must be based on a separate and distinct act. *Id* at 663. If the instructions do not inform the jury that each count must be based on a separate and distinct act, then we must determine whether the evidence, arguments, and instructions made the separate act requirements "'manifestly apparent to the jury.'" *Id.* at 664 (emphasis omitted) (quoting *State v. Berg*, 147 Wn. App. 923, 931, 198 P.3d 529 (2008), overruled in part by *Mutch*, 171 Wn.2d at 663-64)). We review the entire trial record to determine whether flawed jury instructions resulted in a double jeopardy violation. *Id*. A defendant's right

---

[4] Spear argues that the incomplete instructions relieved the State of its burden of proof. But Spear fails to cite to any legal authority showing that the lack of a "separate and distinct" instruction relieves the State of its burden of proof. *See* RAP 10.3(a)(6) (stating that the Appellants' brief must contain "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."); *State v. Rawly*, 13 Wn. App. 2d 474, 482, 466 P.3d 784 (2020) (quoting *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.")). Thus, we hold that Spear's argument fails.

[5] A double jeopardy challenge implicates a constitutional right and may be raised for the first time on appeal. RAP 2.5(a)(3); *State v. Jackman*, 156 Wn.2d 736, 746, 132 P.3d 136 (2006).

to be free from double jeopardy may be violated if it is not clear that it was manifestly apparent to the jury that the State was not seeking to impose multiple punishments for the same offense. *State v. Borsheim*, 140 Wn. App. 357, 367, 165 P.3d 417 (2007).

Here, the instructions failed to inform the jury that each count must be based on a separate and distinct act. Thus, we must determine whether the evidence, arguments, and instructions made manifestly apparent to the jury that the State was not seeking to impose multiple punishments for the same offense. *See Mutch*, 171 Wn.2d at 664.

1.    Testimony

A.R.S. testified to the different ways Spear inappropriately touched her. A.R.S. testified that Spear licked her vagina 5-10 different times until Spear moved out of their house. A.R.S. also identified a time when Spear had A.R.S. rub his penis and sperm came out. A.R.S. also described instances where Spear touched A.R.S.'s vagina, either with his finger, a vibrating tool, or with his penis. Thus, A.R.S. testified to separate and distinct acts of sexual intercourse or sexual contact.

2.    Jury Instructions

We next look to the jury instructions. While there was no separate and distinct acts jury instruction, the trial court provided separate to-convict instructions for each count. The trial court also told the jury that a separate crime was charged for each count, that the jury must decide each count separately, and that the jury's verdict on one count should not affect its verdict on another count. Further, the trial court told the jury that to convict the defendant on any count of first degree rape of a child, one particular act of first degree rape of a child must be proved beyond a reasonable doubt, and they must unanimously agree as to which act has been proved. And to convict the defendant on any count of first degree child molestation, one particular act of first degree child

molestation must be proved beyond a reasonable doubt, and they must unanimously agree as to which act has been proved.

Thus, while a separate and distinct acts jury instruction was lacking, the jury was instructed that a separate crime is charged in each count and the jury had to be unanimous as to a particular act for each separate specified crime. We presume that the jury follows the court's instructions. *State v. Lamar*, 180 Wn.2d 576, 586, 327 P.3d 46 (2014).

3.      Arguments

Lastly, we look at the arguments. During its closing argument, the State informed that jury that "Each of the 'to convict' instructions for the first three counts [were] exactly the same. You have to find separate instances or separate incidents for each one. You have to be unanimous in that each one has a separate time." 3 VRP at 527-28.

The State also informed the jury that it believed there was enough evidence to find beyond a reasonable doubt that the defendant had sexual intercourse with A.R.S. at least three times. The State argued:

> So to convict Counts 1, 2, and 3, you can use any variety of the things you heard. You can use that the defendant licked [A.R.S.] on three different occasions, licked her vagina. You can use that he licked her vagina and put his finger and on her vagina. You can use that he licked her vagina, put his finger in the vagina, and that his penis penetrated her vagina, however slight, even though it was going up and down, but you have to be unanimous as to which three happened. You have to be unanimous. All 12 people have to agrees (sic) on each count, and each count has to be a separate act.

3 VRP at 529.

The State informed the jury that the last two charges involved child molestation. Examples of this molestation included physical touch, rubbing A.R.S.'s vagina, and touching her vagina with

13

a vibrator. The State's argument focused on the jury needing to be unanimous on which act happened on each count and that each count must be based on a separate act.

4. Testimony, Jury Instructions, and Argument Show No Double Jeopardy Violation

Here, given A.R.S's testimony identifying distinct instances of abuse; the clear jury instructions, which the jury is presumed to follow; and the prosecutor's presentation in closing of what actions supported each count all make it manifestly apparent that each count had to be based on a separate act. *See Mutch*, 171 Wn.2d at 664. Because the entire record made it manifestly apparent to the jury that each count had to be based on a separate act, the lack of a separate and distinct jury instruction did not subject Spear to multiple punishments for the same offense. *See id.* at 662-63. Thus, Spear's right to be free from double jeopardy was not violated. *See Borsheim*, 140 Wn. App. at 367.

Spear contends that the jury's question about different acts "shows that the jury did not understand that the five counts must be based on different factual acts." Br. of Appellant at 16. But during deliberations, the jury asked the trial court, "Do all 3 counts need to be a different act or can they be multiple occurrences of the same type of act." CP at 101. This question does not demonstrate that the jury did not understand that the five counts had to be based on different factual acts. Rather, this question shows that the jury wanted to know whether each of the three counts had to be a different act or if different counts could involve multiple occurrences of the same *type* of act. Spear's argument fails.

B. UNANIMITY

Spear argues that the trial court "failed in its duty to make the unanimity requirement manifestly apparent to the jury and erred in failing to answer the jury's question, denying Mr.

Spear his right to a unanimous verdict." Br. of Appellant at 21. Spear contends that the instructions failed to make clear to the jury that it could only reach a verdict if the jury was unanimous. We disagree.

We review for an abuse of discretion a trial court's decision to answer a question from the jury. *State v. Johnson*, 116 Wn. App. 851, 860, 68 P.3d 290, *review denied*, 150 Wn.2d 1021 (2003). A trial court abuses its discretion when it acts in a manifestly unreasonable manner or bases its decision on untenable grounds. *State v. Robinson*, 193 Wn. App. 215, 217-18, 374 P.3d 175 (2016). We review the legal accuracy of the trial court's response de novo. *See State v. Becklin*, 163 Wn.2d 519, 525, 530, 182 P.3d 944 (2008).

Here, the jury posed the following question to the trial court: "Upon reading instruction 7. Do we have to be unanimous on all counts? If we do not have a unanimous vote how is it reported on the verdict form?" CP at 74. Contrary to Spear's assertion, this question does not show that the jury did not understand that they had to be unanimous to reach a verdict. Rather, this question suggests that at the time of the question the jury was not unanimous on *all counts* and wanted guidance on how to report a deadlock on the verdict form. Also, the jury reached a verdict after the trial court told it to reread the instructions, so the record does not show that it did not understand the unanimity instructions. *See Lamar*, 180 Wn.2d at 586 (we presume that the jury follows the court's instructions).

Further, the trial court's Instruction 7 is the *Petrich* instruction informing the jury that to convict Spear on any count of first degree rape of a child, one particular act of first degree rape of a child "must be proved beyond a reasonable doubt and [the jury] must unanimously agree as to

which act has been proved." CP at 83. *See State v. Carson*, 184 Wn.2d 207, 217, 357 P.3d 1064

(2015). In *State v. Petrich*, our Supreme Court stated:

> When the evidence indicates that several distinct criminal acts have been committed, but defendant is charged with only one count of criminal conduct, jury unanimity must be protected. . . . The State may, in its discretion, elect the act upon which it will rely for conviction. Alternatively, if the jury is instructed that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt, a unanimous verdict on one criminal act will be assured.

101 Wn.2d 566, 572, 683 P.2d 173 (1984), *abrogated on other grounds by State v. Kitchen*, 110

Wn.2d 403, 405, 756 P.2d 105 (1988).

In addition to the *Petrich* instruction, the trial court instructed, "[a]s jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict. . . . Nor should you change your mind just for the purpose of reaching a verdict." CP at 78. And "[b]ecause this is a criminal case, each of you must agree for you to return a verdict." CP at 95.

The clear instructions informing the jury that they had to be unanimous in order to reach a verdict and the fact that the jury reached a unanimous verdict shows that the jury understood the unanimity requirement.[6] Thus, the trial court did not abuse its discretion in asking the jury to reread the jury instructions in response to the question.

---

[6] Moreover, under CrR 6.15(f)(2), "[a]fter jury deliberations have begun, the court shall not instruct the jury in such a way as to suggest the need for agreement, the consequences of no agreement, or the length of time a jury will be required to deliberate." Given the question presented by the jury, any further instruction from the trial court after deliberations had begun could have impermissibly suggested the need for agreement.

C.       OFFENDER SCORE

Spear argues that the trial court erred in calculating his offender score because the trial court included two prior convictions from Idaho. Spear contends that the State failed to prove either offense was comparable to a Washington felony. We disagree.

We review the calculation of an offender score de novo. *State v. Howard*, 15 Wn. App. 2d 725, 731, 476 P.3d 10857 (2020), *review denied*, 197 Wn.2d 1006 (2001). RCW 9.94A.525[7] explains the process for how a defendant's offender score is calculated. Generally, each prior felony conviction that has not washed-out counts as one point. RCW 9.94A.525(1), (2). Out-of-state convictions are classified according to their comparable Washington offense. RCW 9.94A.525(3).

Although the State bears the burden of proving the existence and comparability of any out-of-state or federal convictions, "a defendant's affirmative acknowledgement that his prior out-of-state and/or federal convictions are properly included in his offender score satisfies [Sentencing Reform Act] requirements." *State v. Ross*, 152 Wn.2d 220, 230, 95 P.3d 1225 (2004) (emphasis omitted). However, mere failure to object to the State's summary of criminal history does not constitute an acknowledgment, even if the defendant agrees with the State's standard range calculation. *State v. Hunley*, 175 Wn.2d 901, 912, 287 P.3d 584 (2012). A criminal defendant cannot waive a challenge to a miscalculated offender score or a legal error, but he can waive factual error or errors involving the trial court's discretion. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 874, 50 P.3d 618 (2002).

---

[7] RCW 9.94A.525 was amended in 2021. LAWS OF 2021, CH. 215, §100. However, there were no substantive changes made affecting this opinion.

Here, the State, Spear, and Spear's trial attorney signed and presented to the trial court the Prosecutor's Statement of Criminal History. This statement included two crimes Spear committed in Idaho. The crimes were listed as "Lewd Conduct with a Minor Under 16 (comparable to Child Molestation in the Third Degree – RCW 9A.44.089)," and "Enticing a Child Through Internet, Video, Image or other Communication Device (comparable to Communicating with a Minor for Immoral Purposes through electronic means – RCW 9.68A.090(2))." CP at 102. Spear and Spear's defense attorney signed below a provision stating, "The defendant and the defendant's attorney hereby stipulate that the above is a correct statement of the defendant's criminal history relevant to the determination of the defendant's offender score in the above-entitled cause." CP at 102. Attached to the Statement of Criminal History was an offender scoring sheet which listed the offender score as 9+. This sheet included the two prior sex offense convictions from Idaho.

Spear affirmatively acknowledged the inclusion of his out-of-state convictions by signing and presenting to the trial court the Prosecutor's Statement of Criminal History. Thus, the State did not have to prove the existence and comparability of the two Idaho convictions. *See Ross*, 152 Wn.2d at 230. Therefore, we hold that the trial court did not err in calculating Spear's offender score.

D.      COMMUNITY CUSTODY CONDITIONS

Spear argues that "[t]he community custody conditions restricting [his] internet access and requiring he submit to testing and searches are unauthorized by the statute and are unconstitutional." Br. of Appellant at 36.

A sentencing court can only impose community custody conditions authorized by statute. *State v. Kolesnik*, 146 Wn. App. 790, 806, 192 P.3d 937 (2008), *review denied*, 165 Wn.2d 1050

(2009). We review de novo whether the sentencing court had the statutory authority to impose a sentencing condition. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). If the sentencing court had statutory authority, we review the trial court's decision to impose the condition for an abuse of discretion. *Id*. An abuse of discretion occurs when a trial court's imposition of a condition is manifestly unreasonable. *State v. Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). If we determine the trial court imposed an unauthorized condition on community custody, we remedy the error by remanding to the trial court with instructions to strike the unauthorized condition. *See State v. Padilla*, 190 Wn.2d 672, 683, 416 P.3d 712 (2018).

1.      Access to the Internet or Email

Spear argues that the community custody condition restricting his access to the internet or email by electronic devices without Community Corrections Officer or treatment provider approval was not crime related and was unconstitutionally overbroad. We agree the community custody condition was not crime-related.

RCW 9.94A.703(3)(f)[8] allows a court to order an offender to comply with any crime-related prohibitions. A crime-related prohibition is one that is related to the circumstances of the crime for which the offender is being sentenced. RCW 9.94A.030(10).[9] Crime-related prohibitions must be directly or reasonably related to the circumstances of the offense. *Nguyen*, 191 Wn.2d at 683-84. "The prohibited conduct need not be identical to the crime of conviction,

---

[8] RCW 9.94A.703(3)(f) was amended in 2021. LAWS OF 2021, Ch. 215, §109. However, there were no, substantive changes made affecting this opinion.

[9] RCW 9.94A.030(10) was amended in 2021. LAWS OF 2021, Ch. 237, §1; Ch. 215, §97. However, there were no substantive changes made affecting this opinion.

but there must be 'some basis for the connection.'" *Nguyen*, 191 Wn.2d at 684 (quoting *State v. Irwin*, 191 Wn. App. 644, 657, 364 P.3d 830 (2015)).  Internet use is crime-related if there is evidence that internet use "contributed in any way to the crime." *State v. O'Cain*, 144 Wn. App. 772, 775, 184 P.3d 1262 (2008).

Here, the trial court prohibited Spear from accessing the internet or email by electronic devices without Community Corrections Officer or treatment provider approval.  CP 122; PDF 124.  Although there was some evidence that Spear contacted G.F. via SnapChat and told her that he had "gone down on" his niece, this contact did not contribute in any way to the crime against A.R.S.  2 VRP at 389; *See O'Cain*, 144 Wn. App. at 775.  There is no evidence in the record that this prohibition is crime-related.  Therefore, we hold that the trial court erred in imposing the condition and remand to the trial court to strike the community condition.[10]

2.      Testing and Reasonable Searches

Spear argues that the community custody condition requiring him to submit to testing and reasonable searches is not crime-related and violates his right to privacy.  Spear's argument fails.

a.      Legal principles

Unless waived by the court, the trial court shall order an offender to refrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions.  RCW

_____

[10] Because we hold that the trial court erred in imposing the community custody condition under RCW 9.94A.703(3)(f), we do not address Spear's constitutionally overbroad argument. *See State v. Smith*, 104 Wn.2d 497, 505, 707 P.2d 1306 (1985) (stating that a court will not reach a constitutional issue if it can decide the case on nonconstitutional grounds).

9.94A.703(2)(c). Under RCW 9.94A.631(1),[11] "If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property."

Community custody conditions are ripe for review on direct appeal "'if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *State v. Bahl*, 164 Wn.2d 739, 751, 193 P.3d 678 (2008) (quoting *First United Methodist Church v. Hearing Exam'r*, 129 Wn.2d 238, 255-56, 916 P.2d 374 (1996)). "The court must also consider 'the hardship to the parties of withholding court consideration.'" *Id* (quoting *First United Methodist Church*, 129 Wn.2d at 255). Conditions allowing for the search of a person or residence require further factual development. *See State v. Sanchez Valencia*, 169 Wn.2d 782, 788-89, 239 P.3d 1059 (2010); *see also State v. Massey*, 81 Wn. App. 198, 200-01, 913 P.2d 424 (1996) (holding that a condition that the defendant submit to testing and searches of his person, residence and vehicle by the Community Corrections Officer to monitor compliance with the condition that the defendant not purchase, possess, or use illegal drugs was premature for review until the defendant was subjected to a search deemed unreasonable).

b.       Challenge premature

Here, Spear challenges the imposition of the community custody condition that he submit to testing and reasonable searches to comply with the condition that he not possess illegal or controlled substances. The condition imposed follows the language of RCW 9.94A.631(1), which

---

[11] RCW 9.94A.631(1) was amended in 2020. LAWS OF 2020, Ch. 82, §2. However, there were no substantive changes made affecting this opinion.

allows a community corrections officer to require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property when there is reasonable cause to believe the offender has violated a condition. But review of this community custody condition is premature until Spear is subjected to testing. *See Massey*, 81 Wn. App. at 200-01. Further factual development would be needed to determine any challenge to this condition. *See Sanchez-Valencia*, 169 Wn.2d at 788-89; *Bahl*, 164 Wn.2d at 751. Because the condition is permitted by statute and Spear has not been subjected to a search, Spear's claim fails.

E.      LEGAL FINANCIAL OBLIGATIONS (LFOS)

Spear argues that the trial court erred in imposing a DNA collection fee because the record establishes that Spear suffers from a mental health condition and does not have the ability to pay.

A DNA collection fee is mandatory "unless the state has previously collected the offender's DNA as a result of a prior conviction." RCW 43.43.7541; *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018); *State v. Catling*, 193 Wn.2d 252, 257-58, 438 P.3d 1174 (2019). RCW 43.43.7541 requires the collection of a DNA sample from every adult or juvenile convicted of a felony. *State v. Houck*, 9 Wn. App. 2d 636, 651, 446 P.3d 646 (2019), *review denied*, 194 Wn2d 1024 (2020).

Before imposing any LFO other than restitution and the victim penalty assessment, the trial court must determine whether a defendant who suffers from a mental health condition has the ability to pay the obligations. RCW 9.94A.777(1);[12] *Houck*, 9 Wn. App. 2d at 652. A defendant

---

[12] RCW 9.94A.777(1) states:

> Before imposing any legal financial obligations upon a defendant who suffers from a mental health condition, other than restitution or the victim penalty assessment

suffers from a mental health condition when the defendant has been diagnosed with a mental disorder that prevents him from participating in gainful employment. RCW 9.94A.777(2). If the trial court finds that the State has not previously collected the defendant's DNA, the trial court must then consider whether the DNA collection fee should be waived after performing the necessary inquiry under RCW 9.94A.777. *See Houck*, 9 Wn. App. 2d at 652.

In *Tedder*, we determined that based on his involuntary hospitalizations and treatment in mental health court, the defendant suffered from a mental health condition as defined under RCW 9.94A.777. 194 Wn. App. 753, 757, 378 P.3d 246 (2016). Tedder's mental health history, his history in mental health court, the fact that he relied on family for housing, and the court's order of indigency suggested that Tedder had no assets. *Id*. While Tedder self-reported past employment, there was no independent verification that he was actually employed or employable in those positions. *Id*. The record suggested that Tedder did not have the current ability to pay any LFOs and that his incarceration and his mental health history could potentially prevent him from holding employment following release from custody. *Id*. We determined that the trial court never fully inquired into Tedder's work history, his education, whether he could potentially hold a job in the future, or whether he had any outstanding debts. *Id*. We remanded to the trial court for reconsideration of LFOs consistent with RCW 9.94A.777(1). *Id.*

Here, the trial court found that Spear was indigent for purposes of the appeal. Spear reported that he was diagnosed with manic depression, depression, anxiety, and PTSD. Spear took pills every day for these issues and had a mental health therapist. And he reported having a history

---

under RCW 7.68.035, a judge must first determine that the defendant, under the terms of this section, has the means to pay such additional sums.

of self-abuse and had attempted to commit suicide. The record shows that part of his disability benefits from the VA were for anxiety and PTSD. Spear dropped out of high school in 11th grade and worked for the military from 2006 to 2010. Spear reported that he had been a caregiver in Idaho, but it is unclear from the record when that employment occurred. Spear relied on friends and family for housing. After he was medically discharged from the military, Spear received disability benefits from the VA in the amount of $1,175 per month. The pre-sentence investigation report shows that Spear's finances were fine "other than about 3000 dollars in medical bills and other miscellaneous bills" and that he could support himself with his disability benefits. Supplemental CP at 138.

Like in *Tedder*, the record suggests that Spear's incarceration and his mental health history could potentially prevent him from holding employment following his release from custody. *See Tedder*, 194 Wn. App. at 757. While Spear reported that he had been a caregiver, there was no independent verification that that employment occurred. *See id*. Unlike in *Tedder*, Spear did have *some* assets from his VA disability benefits. But the trial court did find Spear indigent for purposes of the appeal. The trial court never fully inquired into Spear's mental health history, work history, or whether he could potentially hold a job in the future. *See id*.

Because there was evidence that Spear suffered from a mental health issues and the trial court did not inquire into his ability to pay, we remand to the trial court for reconsideration of the DNA collection fee, consistent with RCW 9.94A.777(1). *See Houck*, 9 Wn. App. 2d at 652.

Spear also argues that the trial court erred in imposing discretionary community custody supervision fees because Spear is indigent. Under RCW 9.94A.703(2)(d), imposition of community custody supervision fees may be waived at the discretion of the trial court. Here, the

trial court did not appear to exercise any discretion in determining whether to impose or waive the community custody supervision fees. Therefore, we also remand to the trial court reconsider whether to impose community custody supervision fees.

We reverse the trial court's imposition of the DNA collection fee and the community custody supervision fee, and remand for the trial court to reconsider imposition of these fees after determining Spear's mental health status and his ability to pay.

CONCLUSION

We affirm Spear's convictions but remand to the trial court to strike the community custody condition prohibiting access to the internet or email. We also reverse the imposition of the DNA collection fee and the community custody supervision fees, and remand to the trial court to reconsider the imposition of a DNA collection fee and community supervision fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Glasgow, J.